IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEVIN BARTHOLOMEW,                    No. CIV S-09-0882-JAM-CMK-P

    Plaintiff,

  vs.                              FINDINGS AND RECOMMENDATIONS

D.K. SISTO, et al.,

    Defendants.

_____/

       Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion for summary judgment (Doc. 57). Plaintiff filed an opposition to the motion for summary judgment[1] (Doc. 61).

/ / /

/ / /

/ / /

---

[1] Plaintiff also filed a document titled "Summary Judgment" which was docketed as a motion for summary judgment. In that pleading, however, plaintiff simply requests judgment in his favor as defendants failed to file a timely reply to his opposition of the defendants' motion. A reply brief is an optional pleading, and a failure to file a reply brief does not constitute grounds for denying the motion or entering judgment for the plaintiff. The "motion" should therefore be denied.

# I. BACKGROUND

## A. Plaintiff's Allegations

This case proceeds on plaintiff's amended complaint (Doc. 17) on four claims of violation of his Fourth and Eighth Amendment rights, all stemming from a strip search and his placement on contraband watch as well as his treatment while so placed. In his amended complaint plaintiff alleges defendants Jones, Garcia, Pavich, Realander, and Oseguerra authorized or conducted a strip search which was excessive and vindictive, and done with the intent to harass and humiliate plaintiff. Next, he alleges defendants Muhammad, McCorkle, Easterling, Webster, Yang, Bucad, Salee, Lowery, Newsom, and Shchebenko denied him adequate toilet facilities. Third, plaintiff alleges defendant Shchebenko destroyed his medication. Finally, plaintiff alleges defendant Webster[2] denied him blankets, a shower and hygiene facilities after he soiled himself.

## B. Undisputed Facts

The parties each submitted statements of undisputed facts, and plaintiff filed a statement of disputed facts. Based on these statements, the following relevant summary of facts are undisputed. On October 14, 2007, and February 10, 2008, plaintiff was in the visiting area. During his time in the visiting area, plaintiff was observed putting his hands down his pants.[3] An inmate placing his hands down his pants is consistent with an inmate attempting to secrete contraband in order to smuggle it into the prison. Following the observation of plaintiff's hands

---

[2] Defendants McCorkle and Webster have never been served with process and are not currently parties to this action. A review of the docket shows plaintiff was ordered to seek additional information sufficient to effect service on these defendants. He then filed a request for assistance to locate these two defendants. By separate order, the undersigned will request assistance by defense counsel as to defendant Webster. As set forth herein, plaintiff's claims against McCorkle are similar in nature to the other defendants, and can be similarly disposed of.

[3] The reason why plaintiff's hands were down his pants is disputed. Whether plaintiff was attempting to secrete contraband, was scratching due to hemorrhoids, or was tucking in his shirt, it is undisputed that on a few occasions plaintiff's hands were down his pants in the visiting center.

in his pants, plaintiff was removed from the visiting area, and staff conducted an unclothed body search with negative results. Plaintiff was then placed on Contraband Search Watch (CSW), a decision authorized by the Administrator of the Day. During his time on CSW, plaintiff's access to toilet facilities were restricted to the extent that plaintiff had to wait for the assistance of the correctional officer on CSW duty and the on duty sergeant.[4] It can take up to an hour to gather the required personnel at a CSW-inmate's cell before the inmate is allowed to use the toilet. During an inmate's time on CSW, all activity is recorded in a Daily Activity Log every fifteen minutes or as needed. If an inmate soils himself, that is specifically to be recorded on the Daily Activity Log. California Department of Corrections and Rehabilitation (CDCR) and Solano State Prison have a policy prohibiting custodial staff from handling or dispensing inmate medication.

At the times relevant in the complaint, defendants Jones, Muhammad, Garcia, Pavich, Realander, Oseguerra and Newsom were assigned in some capacity to the Visiting area. Defendants Easterling, Yang, Shchebenko, Bucad, and Lowery, were assigned in some capacity to the CSW. Neither Jones nor Muhammad personally participated in the unclothed body search of plaintiff.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

---

[4] Plaintiff disputes whether all of the officers assigned to CSW actually follow this rule, indicating that a sergeant was not always present. He does not, however, dispute that is the policy.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

### III.  DISCUSSION

In their motion for summary judgment, defendants argue there was a reasonable basis for suspecting plaintiff was attempting to smuggle contraband into the prison. Therefore, placing plaintiff on CSW did not violate his constitutional rights. In addition, the defendants argue their treatment of plaintiff during the CSW did not violate his constitutional rights. Defendant Shchebenko also argues he had no access to plaintiff's medication, did not destroy the medication, and was not deliberately indifferent to his medical needs. Finally, the defendants argue they are entitled to qualified immunity.

///

///

Plaintiff counters that the defendants ignore the deprivations he complains of. In addition, based on his objections to the defendants' statement of undisputed facts, the basis of plaintiff's allegations relate to the motivation[5] behind the defendants' actions. Plaintiff argues there was no basis for his placement in CSW, and his treatment while placed in segregation was unreasonable resulting in several instances of soiling himself and not being allowed to clean up.

A.   **Strip Search/Contraband Search Watch**

Plaintiff claims he was removed from the visiting area and subjected to a strip search for the purpose of harassment and humiliation, not for any penological purpose. Defendants counter that the search and placement on CSW was based on his behavior during visitation wherein it was reasonable to believe he was attempting to secrete contraband to smuggle into the prison.

The Fourth Amendment protects against unreasonable searches and seizures. Prisoners "do not forfeit all constitutional perfections" due to incarceration. Bell v. Wolfish, 441 U.S. 520, 545 (1979). However, many constitutional protections are significantly curtailed for incarcerated prisoners, and prisoners are subject to restrictions and limitations based on institutional needs and objectives . See Hudson v. Palmer, 468 U.S. 517, 524 (1984); Bell, 441 U.S. at 546. "The curtailment of certain rights is necessary, as a practical matter, to accommodate a myriad of 'institutional needs and objectives' of prison facilitates, chief among which is internal security." Hudson, 468 U.S. at 524 (citing Wolff v. McDonnell, 418 U.S. 539 , 555 (1974), Pell v. Procunier, 417 U.S. 817, 823 (1974)); see also Turner v. Safley, 482 U.S. 78,

---

[5] The basis of plaintiff's claims were not originally found to state a claim for retaliation. To the extent plaintiff so claims, such allegations cannot be sustained. In order to state a claim under 42 U.S.C. § 1983 for retaliation, a prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). Here, at best plaintiff contends he was retaliated against for his family complaining about their treatment, not the exercise of his own constitutional rights. In addition, as discussed here, the defendants have set forth a legitimate penological purpose for their actions, which plaintiff does not contradict.

1  95 (1986). The Supreme Court has long recognized that "[a] detention facility is a unique place
2  fraught with serious security dangers. Smuggling of money, drugs, weapons, and other
3  contraband is all too common an occurrence." Bell, 441 U.S. at 559. Indeed, the Court
4  acknowledged that while admittedly invasive of personal privacy, visual body cavity searches
5  conducted in connection with contact visits with persons from outside the institution are not
6  unreasonable. Id. at 559-60. However, such "searches must be conducted in a reasonable
7  manner." Id. at 560 (citing Schmerber v. California, 384 U.S. 757, 771-72 (1966).

8  At issue here are the searches conducted during plaintiff's contact visits on two
9  occasions. Plaintiff argues the searches were unjustified as there was no reason to suspect he was
10 trying to conceal contraband. Defendants have submitted declarations wherein they state they
11 witnessed plaintiff place his hands down the rear of his pants in a manner consistent with
12 secreting contraband in his anal cavity. Plaintiff counters that he was either attempting to scratch
13 due to hemorrhoids or was simply tucking his shirt into his pants. Regardless of the reason for
14 plaintiff's hands being in his pants, it is undisputed that plaintiff's hands were in fact down his
15 pants at some time during his contact visits.

16 Given the inherent risk smuggling contraband into a penal institution presents, an
17 indication that an inmate may be attempting to secrete contraband is sufficient reason to
18 terminate a contact visit and take precautions against allowing such contraband into the
19 institution. In order to stop potential contraband from entering the prison, once it is suspected
20 that an inmate in attempting to so smuggle it in, a visual body cavity search is appropriate. Here,
21 as plaintiff's hands were admittedly down his pants at some point during the two visits, such
22 action supports a reasonable indication that plaintiff may be attempting to smuggle contraband
23 into the prison. Thus, the reasons provided for the search are sufficient and plaintiff has not
24 provided any evidence of an ulterior motive. The only question that would remain then is
25 whether the search was conducted in a reasonable manner.
26 / / /

Plaintiff alleged in his amended complaint that the defendants acted inappropriately during the search. In support of their motion for summary judgment, the defendants provided declarations that none of them recall the specifics of the two searches at issue, but that they do not act inappropriately during searches and they conduct themselves accordingly to policy during all strip searches. Plaintiff contends that the searches were humiliating, degrading, disrespectful, and were sexually oriented, and that the defendants laughed at him during the search. In addition, he claims there is nothing in the CDCR policy authorizing the officers to order him to spread his rectum/anus open with his fingers. In addition, he argues that the search was more invasive than other options such as an x-ray or examination by a physician.

The availability of other search options does not render the visual search methods used unreasonable. Visual body cavity searches have been deemed constitutional, and there is nothing before the court in this case that would render such a search unconstitutional. See Bell, 441 U.S. at 558-60; see also Michenfelder v. Sumner, 860 F.2d 328 (9th Cir. 1988). Defendants have provided declarations in support of their argument that they act appropriately and within policy during the strip searches. Plaintiff's conclusory statements in his declaration that the "strip search was sexually orientated humiliating, degrading, and disrespectful" is insufficient to support his contention to the contrary. Plaintiff's argument that CDCR policy does not authorize the spreading of the "anus" or "rectum" but rather the "buttocks" is an argument in semantics. By having the inmate spread his own buttocks in order for the officer to visually inspect the anal cavity, the search for contraband is conducted without being overly invasive. Defendants provide a summary of the search policy in their declarations. The search policy includes a visual inspection of the anal cavity by way of the inmate opening the cavity and the officer visually inspecting. There is no touching of the inmate by the officer, only by the inmate himself. This is the type of search conducted here, and plaintiff does not contend there was any probing by the officers or otherwise invasive search.

As for the officer's conduct during the search, plaintiff indicates the defendants involved therein laughed at him and acted unprofessionally. Even if the defendants laughed during the search, such behavior does not rise to the level of a constitutional violation. Allegations of verbal harassment do not state a claim under the Eighth Amendment unless it is alleged that the harassment was "calculated to . . . cause [the prisoner] psychological damage." Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987); see also Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998). In addition, the prisoner must show that the verbal comments were unusually gross, even for a prison setting, and that he was in fact psychologically damaged as a result of the comments. See Keenan, 83 F.3d at 1092. Plaintiff makes no such allegations. While likely unpleasant, the undersigned does not find the search at issue was conducted in an unreasonable manner. Plaintiff fails to support his contention otherwise. Therefore, the undersigned finds the defendants did not violate plaintiff's Fourth or Eighth Amendment rights during the strip searches at issue.

The next issue is whether plaintiff's referral to CSW violated his constitutional rights. Plaintiff argues the referral to CSW was arbitrary and was not done for any legitimate penological purpose. Defendants contend the referral to CSW was done for legitimate penological purpose and was based on a reasonable suspicion that plaintiff was attempting to smuggle contraband into the prison. As discussed above, it is undisputed that during the two visits in question, plaintiff had placed his hands down his pants. The reason for the placement of his hands is irrelevant. Such action supports the defendants' decision to conduct the search. While the search was negative for contraband, plaintiff's conduct still supports the defendants' decision to place him on CSW. Although plaintiff's body cavity search was negative, the defendants had reasonable suspicion that he was attempting to smuggle contraband into the prison. Thus, objectively his placement on CSW is supported by the evidence, and plaintiff fails to provide evidence of any ulterior motive. Therefore, the undersigned finds no violation for conducting the body cavity search or placing plaintiff on CSW.

B. **Treatment during Contraband Search Watch**

Plaintiff next claims his Eighth Amendment rights were violated by his treatment while on CSW. Specifically, plaintiff claims he was denied access to toilet facilities resulting in him urinating in his clothing. This happened both on his way to CSW and during his time therein. Defendants counter that an inmate on CSW necessarily has restricted access to toilet facilities. Plaintiff, however, was provided access to toilet facilities upon request, but CSW policies had to be followed resulting in some delay. The restrictions on plaintiff's toilet access were necessary and did not violate plaintiff's constitutional rights.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). "Indeed, only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment Violation." Wilson v. Seiter, 501 U.S. 294, 298 (quoting Rhodes, 452 U.S. at 347). Prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). However, temporary unconstitutional conditions of confinement do not rise to the level of constitutional violations. See Anderson v. County of Kern, 45 F.3d 1310, 1314-15 (9th Cir. 1995). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable

mind." See id.

Here, plaintiff argues his treatment on CSW violated his rights because he was denied free and immediate access to toilet facilities and was denied the ability to shower after he soiled himself.[6] While on CSW, an inmate is being observed for passing contraband that was potentially secreted in his rectum. In order to do so, prison officials have to observe all movements of the inmate, including their use of toilet facilities. If prisoners suspected of secreting contraband are allowed free and unobserved use of toilet facilities, any contraband that has been secreted may be disposed of or hidden by the inmate and introduced to the prison population. Such a possibility puts institutional security at risk. The denial of free access to the toilet during a such a relatively short period of time does not violate the Eighth Amendment.

Plaintiff alleges that he was denied immediate access to the toilet, and as a result soiled himself several times during his CSW time. Defendants acknowledge that an inmate on CSW does not have immediate access to the toilet because their clothing is secured and a sergeant is required to be present when the inmate uses the toilet. The parties have provided activity logs for the time plaintiff was on CSW. According to those logs, plaintiff urinated every few hours, many times without incident. There were several occasions where plaintiff urinated in his jumpsuit, which required a change of clothing. Those incidents were noted in the log. During plaintiff's first CSW, between October 14 and October 16, 2007, the time at issue in this action, the logs indicate plaintiff urinated several times without incident, but urinated in his clothing two times. Each time, the logs indicate his clothing was changed. During the second CSW, between February 10 and February 12, 2008, again the time at issue, the logs indicate plaintiff urinated several times without incident, and only once in his clothing requiring a change of his jumpsuit.

///

---

[6] The denial of access to a shower claims related only to defendant Webster who has not been served or appeared in this action, as discussed *supra*.

As set forth above, in order for a condition of confinement to violate the Eighth Amendment, such condition must be more than uncomfortable. See Rhodes, 452 U.S. at 347. In addition, the prison official involved must acted with the purpose of inflicting harm. Objectively, the conditions plaintiff faced in CSW were no doubt harsh. However, harsh and restrictive conditions are insufficient to violate the Eighth Amendment in a prison setting. Especially here where plaintiff was suspected of risking institutional security by smuggling contraband into the prison. While the searches and CSW ended up with negative results, there was evidence to support such restrictions as necessary for institutional security. Subjectively, the defendants have submitted declarations indicating prison policy required an officer and a sergeant be present for all toilet use during any CSW, a reasonable protection for all involved. Each defendant indicated when plaintiff requested to use the toilet, the sergeant was notified, but before the sergeant could attend to him, plaintiff had soiled himself. Plaintiff has not provided evidence that any of the defendants acted with malicious intent in delaying his use of the toilet, nor is there any indication that any of the defendants acted maliciously in denying him immediate access to toilet facilities. Rather, the defendants each state in their declaration that the sergeant was notified immediately, as they were required to do per policy. Indeed, the defendants assigned to plaintiff's CSW state in their declarations that plaintiff soiled himself at most once during each of their shifts. For instance, plaintiff alleged in his complaint that he requested to use the toilet at approximately 0800 hours, but defendant Shchebenko told him to wait until after his break. However, the logs indicate plaintiff was allowed to urinate at 0800, but soiled himself at 1100 while another officer was on duty. (See Shchebenko Decl., Doc. 54-7, at 8). Thus, there is no evidence that the defendants acted with deliberate indifference to plaintiff's needs, nor that any defendant subjected plaintiff to an extended period of severe lack of sanitation.

Similarly, plaintiff's allegations of being denied toilet access during his transition to CSW was at best a temporary denial. Requiring plaintiff to wait until he was processed into CSW, given the reason for such transition, was not objectively unreasonable. The defendants

were processing an inmate suspected of secreting contraband.  Requiring the inmate to wait to use the toilet facilities until properly processed into CSW and the necessary safeguards in place to catch any potential contraband is not objectively unreasonable.  Nor does plaintiff provide any evidence that such treatment was against policy or that the defendants knowingly disregarded an excessive risk to plaintiff.  Such treatment does not rise to the level of a constitutional violation.  The undersigned finds the defendants did not violate plaintiff's constitutional rights for denying him immediate access to toilet facilities during his time on CSW.

**C.     Medical Needs**

As discussed above, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint, 801 F.2d at 1107.  Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).  Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.

1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). However, the Eighth Amendment is violated only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834.

Here, plaintiff alleges defendant Shchebenko violated his Eighth Amendment rights by destroying his blood pressure medication. Defendant Shchebenko denies destroying any of plaintiff's medication, stating that only medical personnel are authorized to handle medication and he therefore had no ability to destroy the medication. Plaintiff alleges defendant Shchebenko destroyed the medication and told another officer not to give plaintiff his medication as it made him have to urinate frequently. Plaintiff relies on the Daily Activity Log, CDC 114-A, where it indicates "10/14/07 Brought med needs refill on Albuterol," indicating plaintiff's inhaler. This does not support his theory that all of his medication was accessible by defendant Shchebenko. Plaintiff also fails to state how many doses of his blood pressure medication he missed, and how missing those doses of his medication further risked his health. Therefore, even if plaintiff was able to show defendant Shchebenko destroyed his blood pressure medication, he fails to provide any evidence that the act was objectively so serious that it put his health at risk. Given that defendant Shchebenko was only on duty during one day shift, it is unlikely that plaintiff missed more than one dose of his medication. Plaintiff therefore fails to meet both prongs of the test for violation of the Eighth Amendment, and fails to support his claim.

### IV. CONCLUSION

Plaintiff fails to show a genuine issue as to any material fact that the defendants violated his Fourth and Eighth Amendment rights by subjecting him to a strip search, placing him on CSW, and denying him immediate access to toilet facilities while on CSW. Thus,

defendants' motion for summary judgment should be granted.[7]  In addition, defendant McCorkle should be dismissed from this action as any claim against him cannot be maintained pursuant to the discussion herein, and for failure to effect timely service.  See Fed. R. Civ. Proc. 4(m).

        Based on the foregoing, the undersigned recommends that:

        1.     Defendants' motion for summary judgment (Doc. 54) be granted;

        2.     Plaintiff's motion for summary judgment (Doc. 66) be denied;

        3.     Judgment be entered in favor of defendants Jones, Muhammad, Garcia, Pavich, REalander, Oseguerra, Easterling, Yang, Shchebenko, Bucad, Lowery, and Newsom;

        4.     Defendant McCorkle should be dismissed from this action; and

        5.     This case continue against defendant Webster only, for violation of plaintiff's Eighth Amendment rights by denying hygiene during his Contraband Search Watch.

        These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 2, 2012

                                                        */s/ Craig M. Kellison*
                                                        CRAIG M. KELLISON
                                                        UNITED STATES MAGISTRATE JUDGE

---

[7] Defendants also raise a qualified immunity defense in their motion.  However, as the undersigned has found the claims raised are insufficient against the defendants named, it is not necessary to address the qualified immunity issue.  If the undersigned were to address the claim, however, it is not likely that a reasonable correctional officer in a similar circumstance would have thought his/her conduct would have violated plaintiff's Eighth Amendment rights by requiring plaintiff to submit to a unclothed search or placing him on CSW, nor by denying him free access to the toilet while on CSW.  See Saucier v. Katz, 533 U.S. 194, 205 (2001).